IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL JOHNSON,

       Plaintiff,　　　　　　　　　　21cv1916
　　　　　　　　　　　　　　　　　　　ELECTRONICALLY FILED
          v.

PROGRESSIVE ADVANCED INSURANCE
COMPANY *formerly doing business as*
PROGRESSIVE,

       Defendant.

**MEMORANDUM OPINION**

This case arises out of an insurance coverage dispute surrounding the underinsured motorist ("UIM") coverage in the insurance policy issued by Defendant. Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. ECF 5. Defendant filed a brief in support of its motion (ECF 6), Plaintiff filed a brief in opposition (ECF 10), Defendant filed a Reply (ECF 11), and a Supplemental Reply Brief.[1] ECF 14. The matter is ripe for adjudication.

**I. Factual and Procedural Background**

The Complaint alleges that Plaintiff was seriously injured in an automobile accident on January 14, 2018. ECF 1-1. According to the Complaint, the tortfeasor's insurance carrier, Geico Insurance, paid Plaintiff the bodily injury limits of its $15,000 policy. Id. Plaintiff, who lived with her sister, was a regular-user of sister's vehicle, and was driving her sister's vehicle at the time of the accident, claims that she requested UIM benefits through her sister's automobile insurance policy (issued by Defendant), seeking entitlement to the UIM benefits as a "resident relative." Id.

---

[1] Also pending before this Court is Plaintiff's Motion to Stay this matter and Defendant's Opposition to the Motion to Stay these proceedings.

Relevant to this case, the insurance policy issued by Defendant contains the following language in the UIM section:

> PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE
>
> \* \* \*
>
> EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.
>
> Coverage under this Part III will not apply:
>
> 1. to bodily injury sustained by any person while using or occupying:
> \* \* \*
> b. a motor vehicle that is . . . available for the regular-use of . . . a relative, or a rated resident. This exclusion does not apply to a covered auto that is insured under this Part III;

ECF 1-1 at p. 33.

Defendant admits that at time of Plaintiff's accident, Plaintiff was using her sister's insured vehicle, which was made available for Plaintiff's regular-use, without listing Plaintiff on the insurance policy. ECF 6. By way of a letter dated February 13, 2018, Defendant denied Plaintiff's request for UIM coverage, citing the "regular-use" exclusion in the policy. ECF 1-1 at p. 52.

Plaintiff made a second request for UIM coverage under Defendant's insurance policy on November 5, 2021, following Pennsylvania's Superior Court decision in *Rush v. Erie Insurance Exchange*, which held that "regular-use" exclusions are unenforceable, because they run contrary to Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"). *Rush v. Erie Insurance Exchange,* 265 A.3d 794 (Pa. Super 2021). Id at p. 53-54. Defendant again denied coverage, and Plaintiff brought the instant lawsuit, originally filing in the Court of Common Pleas of Allegheny County, Pennsylvania. Id. at p. 55.

After removing the case to this Court, Defendant filed the instant motion to dismiss, with a brief in support. ECF 5, ECF 6. Plaintiff filed a response in opposition (ECF 10), and Defendant filed a reply brief and a supplemental reply, shortly thereafter. ECF 11, ECF 14. Through is replies, Defendant informed this Court that the *Rush* decision had been appealed to the Pennsylvania Supreme Court – which has not, as of the date of this Opinion, indicated whether it will grant review of the matter.

Plaintiff filed a Motion to Stay the instant proceedings (ECF 18), in light of the appeal request made by the insurance carrier in *Rush*, and Defendant filed a Brief in Opposition to the Motion to Stay. ECF 19.

**II. Standard of Review**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**III. Analysis**

Defendant filed the instant motion to dismiss arguing that the Pennsylvania Supreme Court in *Williams v. GEICO Govt. Emp. Ins. Co.*, 32 A.3d 1195 (Pa. 2011), barred individuals from obtaining UIM coverage when the policy contains a "regular-use" exclusion.[2]  Plaintiff

---

[2] This Court, exercising diversity jurisdiction, is obliged to apply the substantive law of Pennsylvania. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

4

opposes Defendant's motion, countering that the Pennsylvania Superior Court has more recently determined that the "regular-use" exclusion runs afoul of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), and thus, is unenforceable. *Rush*, *supra*. Defendant's reply and supplemental reply suggest that this Court should not rely on the *Rush* decision, noting that the *Rush* decision has been appealed to Pennsylvania's Supreme Court.

The Court begins its analysis by reviewing the relevant Pennsylvania case law that governs the issue before the Court.

### A. *Williams* and its antecedents

In *Williams*, the Pennsylvania Supreme Court stated that it was granting "review to address whether the 'regular-use' exclusion contained in a personal automobile insurance policy is valid to preclude payment of underinsured motorist ("UIM") benefits to a police officer injured in the course of employment while operating a police vehicle for which the officer did not have the ability to obtain UIM coverage." 32 A.3d 1197. However, the Court later in its opinion clarified that in granting Williams' allowance of appeal, it was limiting its review "to whether public policy requires permitting a police officer to recover UIM benefits under his personal automobile insurance policy, when the recovery would be otherwise precluded by the policy's 'regular-use' exclusion." *Id*. at 1198. The Court stated a second time, "[i]n the instant case, we must determine whether regular-use exclusion, is void as against a public policy that favors protecting first responders." *Id*. at 1199.

Under the facts of the *Williams* case, at the time of the automobile accident, police officer Williams was seriously injured while operating a car owned and maintained by the Pennsylvania State Police. *Id*. at 1197. Officer Williams maintained his own personal automobile insurance with GEICO, which provided UIM coverage limits of $50,000 per person and $100,000 per

accident with stacking available. *Id.* When Williams sought to recover the UIM benefits from GEICO, GEICO denied coverage based on the regular-use exclusion in its policy which indicated that UIM coverage would not apply when Williams was "using a motor vehicle furnished for [his] regular-use, . . . which is not insured under this policy." *Id.*

When GEICO filed a motion for summary judgment based on this exclusion, the trial court granted it, and the Pennsylvania Superior Court affirmed in an unpublished memorandum, finding it was bound by a prior panel decision in in *Brink v. Erie Ins. Group*, 940 A.2d 528 (Pa. Super. 2008).[3] When Williams sought review from the Pennsylvania Supreme Court, the Court began its analysis by noting a recent trend had been for litigants to claim that specific insurance policy provisions violated public policy, and specifically referenced *Penna. Nat. Mut. Cas. Co. v. Black*, 916 A.2d 569 (Pa. 2007), wherein the Pennsylvania Supreme Court held:

> "Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." [*Prudential Prop. And Cas. Ins. Co. v.*] *Colbert*, 813 A.2d at 750. In recent years, this Court has addressed several claims that unambiguous provisions in automobile insurance policies are unenforceable because they violate public policies expressed in or underlying the MVFRL. In response, we have repeatedly emphasized our reticence to throw aside clear contractual language based on "the often formless face of public policy." *Id*. at 752.

---

[3] In *Brink*, the Superior Court, considered and rejected each of the police officer's (Brink's) four arguments suggesting he should be able to recover UIM benefits from his own automobile insurance policy after he was injured in an accident that occurred in the course and scope of his employment despite his policy's regular-use exclusion. Brink argued that: (1) the language of the "regular-use" exclusion in his insurance policy was ambiguous; (2) the exclusion did not apply because Brink's use of the police car was not "regular;" (3) even if coverage was properly denied under the strict terms of the "regular-use" exclusion, Brink was nevertheless entitled to receive UIM benefits under the policy based on his reasonable expectation of coverage; and (4) the application of the "regular-use" exclusion under the facts of this case would violate Pennsylvania public policy. The Superior Court specifically found: (1) the language of the policy to be unambiguous, (2) Brink's use of the police car to be "regular," and (3) because the policy language was unambiguous, Brink had no reasonable expectation of privacy. With respect to the fourth argument, the Superior Court noted the Pennsylvania's Supreme Court in *Burstein v. Prudential Property & Casualty Insurance Company*, 809 A.2d 204 (Pa. 2002), held that "regular-use" exclusions were valid as against public policy attacks. The Superior Court further held that even though Brinks' UIM carrier knew Brinks was a police officer at the time it issued the UIM policy, the Court could not infer that the insurance carrier knew the risk or accepted the risk of providing UIM insurance to a police officer. Thus, the *Burstein* decision controlled this issue, and thus, Brink was properly denied UIM benefits.

916 A.2d at 578.

In light of the *Black* decision and the Court's reluctance to disregard unambiguous contract terms based on public policy, Williams essentially asked the Pennsylvania Supreme Court to a carve out a narrow public policy exception for emergency responders so that he and other emergency responders could collect UIM benefits, noting that other statutory provisions (such as the Heart and Lung Act, the Workers' Compensation Act, the Occupational Disease Act, and the Emergency Medical Services Act), all illustrated the legislature's desire to protect and provide for first responders. Thus, Williams argued that not allowing him to collect UIM benefits would indeed violate public policy as illustrated by the legislative intent behind those other Acts which protected first responders.

Disagreeing with Williams' argument, the Pennsylvania Supreme Court held, "if any public policy can be derived from these statutes, it is clear that the statutes favor requiring the first responder's employer to protect its employee, rather than any private person or entity." 32 A.3d at 1203. The Court went on to conclude that even if it were to agree with Williams' opinion as to the state legislature's desire to protect and provide for first responders, the Court "could not conclude that it requires invalidating the regular-use exclusion." *Id.* The Court further held that it was "not the proper function of this Court to weigh competing public policy interests" finding that task to be "best suited for the [state] legislature." *Id.* at 1204.

Next, Pennsylvania's Supreme Court in *Williams* reexamined its prior decision in *Burstein v. Prudential Prop. and Cas. Ins. Co.*, 809 A.2d 204 (Pa. 2002), wherein the Court held that the exclusion of UIM coverage for injuries while using a regularly used, non-owned car comported with public policy. 32 A.3d at 1204. In reaching its decision in *Burstein*, the Court declined to award UIM benefits to Mrs. Burstein whose employer had waived UIM coverage on

7

a car it had provided to Mrs. Burstein for her own use. When Mrs. Burstein tried to collect under her own personal UIM insurance policy issued by Prudential, the Court agreed that Prudential's policy, which contained a regular-use exclusion, did not violate public policy and thereby precluded her (and her husband) from recovering UIM benefits.

After conducting this review, the Court in *Williams* held:

> The crucial factors underlying *Burstein* and the instant case are identical—an employee injured while driving his employer-owned vehicle attempted to recover UIM benefits from his private insurer without compensating the insurer for that unknown risk. [footnote omitted] In that regard, we find that Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected. *Hall*, 648 A.2d at 761. Therefore, we reaffirm *Burstein* and hold that the regular-use exclusion is not void as against public policy.

32 A.3d at 1206.

This Court finds that the Pennsylvania Supreme Court's analysis in *Williams* clearly focused its analysis on whether the regular-use exclusion in a UIM benefits insurance contract generally violated public policy, and specifically, the public policies underlying the MVFRL, and ultimately, based on its earlier precedent in the *Brink*, *Black*, and *Burstein* cases, determined that a regular-use exclusion did not violate public policy.

After distinctly identifying the issue on review in *Williams* to determine "whether public policy requires permitting a police officer to recover UIM benefits under his personal automobile insurance policy, when the recovery would be otherwise precluded by the policy's 'regular-use' exclusion[,]" and after writing pages on the public policy arguments (as this Court abbreviated above), the Supreme Court tacked on a few paragraphs discussing whether the regular-use exclusion violated the express language of the MVFRL. 32 A.3d at 1207. In this regard, the Supreme Court summed up its position by stating:

8

> [Williams] and the [amici, Pennsylvania Association for Justice] also assert that the regular-use exclusion violates the express language of the MVFRL. In advancing this argument, Appellant and the *amici* essentially seek to re-litigate *Burstein*. However, [Williams] presents no compelling reason to revisit the prior decision.
>
> \*   \*   \*
>
> Moreover, to the extent that [Williams] and the PAJ ask us to reconsider the holding in *Burstein* and find that the regular-use exclusion itself violates public policy due to the conflict with the MVFRL, their arguments are misplaced. To re-interpret 75 Pa.C.S. § 1731 to preclude long-standing exclusions to UIM coverage on public policy grounds would violate the canons of statutory construction. *Commonwealth v. Mitchell*, 588 Pa. 19, 902 A.2d 430 (2006), *cert. denied*, 549 U.S. 1169, 127 S.Ct. 1126, 166 L.Ed.2d 897 (2007).

*Id.*

Importantly, this Court's review of the *Burstein* decision has revealed that the Supreme Court did not consider nor discuss whether regular-use exclusion in a UIM policy expressly conflicted with any specific provision of the MVFRL. Like *Williams,* the *Burstein* decision focuses solely on whether the regular-use exclusion violates public policy when construed against the legislative intent of the MVFRL – to contain the costs of insurance. Given the Supreme Court's stated scope of review in the *Williams* case, the above-quoted statements are, at best, *dicta*, and thus, non-binding as precedent. Moreover, because neither the *Burstein* nor the *Williams* cases analyzed whether a regular-use exclusion found in the UIM portion of an automobile insurance policy expressly violates a specific provision of Pennsylvania's MVFRL, the above-quoted statements are merely conclusory and lack any legal support. Thus, this Court does not find the above-quoted statements in the *Williams* case, which rely on the analysis of the *Burstein* case, to be persuasive on the issue of whether a regular-use exclusion found in the UIM portion of an automobile insurance policy expressly violates a specific provision or provisions of Pennsylvania's MVFRL.

### B. Post-*Williams* case law

In the more recent Pennsylvania Superior Court case, *Rush v. Erie Insurance Exchange,* 265 A.3d 794 (Pa. Super. 2021), the Superior Court held:

> Our Supreme Court, after conducting a public policy analysis [in *Williams*], concluded that the insured had failed to meet the high burden of establishing that the regular-use exclusion violated the public policy supporting the MVFRL. *Id*. at 1206.
>
> We note that the Court, in *dicta*, stated that a "regular-use" exclusion clause did not violate the express terms of the MVFRL. *Id*. at 1208. Since this was not the issue before the Court on appeal, it is *dicta* and we are not bound by it. *See Commonwealth v. Romero*, 646 Pa. 47, 183 A.3d 364, 400 n.18 (2018) (explaining that *dictum* is "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential[.]").

265 A.3d 794, 797–98 (2021), *reargument denied* (Dec. 28, 2021).

After the extensive review in *Williams,* and given the antecedent cases which led to the *Williams* decision (specifically *Brink*, *Black*, and *Burstein*), this Court concurs with the Superior Court's analysis in *Rush* – namely that the statement the Pennsylvania Supreme Court issued its *Williams* opinion finding that a regular-use has not considered the specific issue of whether a regular-use exclusion indicating an automobile UIM insurance policy's regular-use exclusion does not violate the express language of the MVFRL – to be *dicta,* and therefore, not controlling on this very narrow issue.

Turning to the *Rush* decision, the facts involved a police detective who suffered serious injuries when two other drivers crashed into his police vehicle. 265 A.3d at 795. The detective did not own or insure the police vehicle, but he and his wife did own two personal automobile insurance policies issued by Erie Insurance. *Id.* Both policies provided for UIM coverage, and both policies included identical regular-use exclusion clauses which indicated that the UIM

10

insurance would not apply to, "[b]odily injury to 'you' . . . using a non-owned 'motor vehicle ' . . . which is regularly used by you . . . but not insured for uninsured or underinsured motorist coverage under this policy." *Id.* As a result of this policy language, Erie denied coverage, and the detective and his wife filed a lawsuit. On motions for summary judgment, the trial court ruled in favor of Detective Rush and his wife, finding the that the regular-use exclusion violated the requirements of Pennnsylvania's MVFRL.

Erie appealed to the Pennsylvania Superior Court, asking the Court to reverse the trial court decision, by finding that the trial court erred in: (1) invalidating the regular-use exclusion, and (2) declaring that the regular-use exclusion in the insurance policy violated various provisions of the MVFRL. *Id.* at 796. The Superior Court summed up both issues by noting that Erie was essentially challenging the trial court's finding that the regular-use exclusion in its policies violated the MVFRL.

Relying on *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110 (Pa. 2019), wherein the Pennsylvania Supreme Court held that Pennsylvania's "MVFRL is comprehensive legislation governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles[,]" the Superior Court also noted that *Sayles* deemed any insurance provision to be unenforceable if that provision contravened the MVFRL. 265 A.3d at 796. See also, *Generette v. Donegal Mut. Ins. Co*., 957 A.2d 1180, 1190-91 (Pa. 2008) ("While we are wary to declare contractual language invalid as against public policy, we are obliged to find contractual language to be contrary to public policy when it violates statutory language: 'stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to

11

the statute, and are invalid, since contracts cannot change existing statutory laws.'" *Colbert*, 813 A.2d at 751 (internal citation omitted)).

In *Sayles,* the Pennsylvania Supreme Court specifically held that an independent medical examination ("IME") provision in an Allstate insurance policy "manifestly conflict[ed] with," and was "repugnant to, the statutory protections for individuals insured under automobile insurance policies regarding the conduct of IMEs as established by the General Assembly in Section 1796(a) [of the MVFRL]; consequently, they are void as against the public policy of this Commonwealth."

Using *Sayles* as its guide, the Superior Court in *Rush* whether the "regular use" exclusion in the Erie insurance policy ran afoul of any provision in the MVFRL to determine. Finding that Erie's regular-use exclusion did contravene Pennsylvania's MVFRL, the Court in *Rush* held:

> Section 1731 of the MVFRL governs the scope of UIM coverage in Pennsylvania. 75 Pa.C.S. § 1731. It provides that, absent a rejection of coverage, insurers shall provide UIM coverage that "protect[s] persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." Id. at § 1731(c).
>
> Insurers are relieved of the obligation of providing UIM coverage only when an insured waives such coverage by executing a statutorily prescribed rejection form. Id. at §§ 1731(c), (c.1). In the absence of a signed and valid rejection form, "uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." Id. at § 1731(c.1).
>
> \* \* \*
>
> We emphasize that Section 1731 defines the scope of UIM coverage broadly. It requires UIM coverage whenever an insured suffers injuries "arising out of the ... use of a motor vehicle." Id. at § 1731(c) (emphasis added). Section 1731 does not consider who owns the vehicle and the frequency with which the insured uses it.

265 A.3d at 796-97.

Based on the foregoing law and authority, this Court finds that the Pennsylvania Supreme Court in *Sayles* made it clear that if an insurance contract provision were to contravene any part of the MVFRL that provision must be struck down as violative of the law. This Court also finds that because the Superior Court in *Rush,* in reliance *Sayles*, held that the regular-use clause of an insurance contract contravenes Section 1731 of the MVFRL, this Court is bound by that decision, as it is the most current body of law governing this discreet issue.[4]

Plaintiff in the instant case argues that Defendant's regular-use exclusion clause in its automobile insurance policy runs afoul of Section 1731 of Pennsylvania's MVFRL, and this Court, after a thorough analysis of all of the Pennsylvania state law on this matter, agrees.[5]

### IV. Conclusion

Given the above-cited law and the facts of this case – which the Court has accepted as true for purposes of deciding this Motion to Dismiss – the Court will DENY Defendant's Motion to Dismiss without prejudice to re-raise the matter should the Pennsylvania State Supreme Court take up the issue and reverse the Superior Court decision in *Rush*. An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc: All ECF Counsel of Record

---

[4] The general common law rule "requires a court 'to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.'" *United States v. Jacobs*, 919 F.2d 10, 11 (3d Cir.1990) (*quoting Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)). *United States v. Dixon,* 648 F.3d 195, 199 (3d Cir. 2011).

[5] Decisions of the Superior Court of Pennsylvania are relevant and should not be disregarded unless this Court is "convinced by other persuasive data that the highest court of the state would decide otherwise." *Covington v. Continental General Tire,* 381 F.3d 216, 218 (3d Cir. 2004) (*quotation marks and citation omitted*). This Court is not so convinced.